**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VANN L. BAILEY,** | : | **Civil No. 1:19-CV-1458** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN KAUFFMAN, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

## I.    Factual Background

This *pro se* prisoner lawsuit stems from disciplinary proceedings involving the plaintiff, Vann Bailey. Bailey was found guilty of violating prison contraband rules after an incoming card mailed to him tested positive during a Nark II test for infusion with a controlled substance, suboxone. In his amended complaint, Bailey acknowledges this positive Nark II drug test, and concedes that the test has an 85% accuracy rate. He nonetheless decries the prison's failure to preserve the card, or have the Pennsylvania State Police conduct a second test of that card. Alleging that these matters raised concerns of a constitutional dimension, Bailey asserts that these disciplinary proceedings were fundamentally flawed in ways which violated the First, Eighth and Fourteenth Amendments.

We disagree. Given the concessions made by Bailey in his second amended complaint, which acknowledges both the positive Nark II test result and the test's

85% accuracy rate, we are constrained to join that rising tide of caselaw which has found that such drug tests satisfy the burden of proof in a prison disciplinary setting, where due process simply requires the presence of some evidence to support the disciplinary determination. Therefore, as discussed below, we will grant this motion to dismiss.

This case comes before us on the second amended complaint by *pro se* Plaintiff Vann Bailey, an inmate at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). Bailey's complaint seeks compensatory damages[1] pursuant to 42 U.S.C. § 1983 for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments of the United States Constitution.

We consider as true the following factual background presented by Plaintiff Bailey in his complaint. The controversy begins with a Valentine's Day card sent to Bailey from his mother. Bailey alleges that, on March 25, 2018, Defendant Yohn, a Correctional Officer at SCI-Huntingdon, searched his personal property and found the Valentine's Day card, which Yohn noted had an inked red line inside. (Doc. 49, at 5). Yohn ordered the card be tested for narcotics using a Fluorescence Polarization Immunoassay ("Nark II test"), and the test result turned up positive for suboxone. (Id., at 5-6).

---

[1]Bailey's second amended complaint also seeks preliminary injunctive relief. The Court denied Bailey's motion for preliminary injunction in a separate order on August 2, 2021. (Doc. 57). Thus, we do not address his request in this memorandum.

After the positive test, Defendant Lofferty, another Correctional Officer at SCI-Huntingdon, issued a misconduct report charging Bailey with possession or use of a dangerous or controlled substance and possession of contraband. (Doc. 49, at 6). A disciplinary hearing was held on March 17, 2018, with Defendant Ellenberger serving as the hearing examiner. (Id.) At the initial hearing, Bailey requested additional time to prepare evidence, including requesting to have the Valentine's Day card re-tested. (Id.) Bailey signed a waiver of the first hearing, and a follow-up disciplinary hearing was held on March 29, 2020. (Id., at 7).[2] Bailey again requested that the Valentine's Day card be re-tested, indicating that other inmates had been permitted to take a second test. (Id.) At the hearing, Bailey alleges Ellenberger based his finding of guilt on a photocopy of the Nark II report, not the actual testing results. (Id.) Ellenberger also relied on the written report filed by Lofferty and discounted Bailey's claims that the card was not inked with a red line of suboxone. (Id.) His request to have the card re-tested was denied, and Bailey was found guilty of all charges cited in the misconduct report. (Id.)

Bailey was sentenced to 45 days in segregation confinement in SCI-Huntingdon's Restricted Housing Unit ("RHU") and lost visitation rights with his "Elderly Sick Mother." (Doc. 49, at 8). In the months following the hearings, Bailey

---

[2] The purported date of this second hearing falls well after Bailey commenced this lawsuit. Bailey does not explain this anomaly, which may well be a typographical error, but we accept that date for purposes of consideration of the instant motion.

continued his quest to have the Valentine's Day card re-tested. He argued that, because the Nark II test is only 85% accurate, the results are not usable unless a second test is provided to confirm the results, or the results are confirmed by an approved analytical laboratory. (Id., at 10-11). He also maintained that three similarly situated inmates had been exonerated under similar circumstances after receiving permission to have a second Nark II test. (Id.)

He first sent written requests to Defendant Kauffman, Superintendent of SCI-Huntingdon, Defendant Brumbaugh, Deputy Superintendent for Facilities Management at SCI-Huntingdon, and Defendant Walters, Deputy Superintendent for Centralized Services at SCI-Huntingdon. (Id.) He then sent a DC-135A "Inmates Request to Staff Member" form to Brumbaugh and Kauffman requesting that they intervene in the finding of guilt and allow Bailey to pay for the cost of a re-test of the Nark II. (Id., at 8-9). Finally, he filed an appeal to the Program Review Committee ("PRC") requesting their intervention. Walters and Brumbaugh were active committee members on the PRC board at the time. (Id., at 9) Bailey's sentence was upheld by the PRC, despite their alleged awareness of the inaccuracies of the Nark II test and the fact that other inmates were afforded a second test. (Id.)

Following the PRC denial, Bailey endeavored to pursue the instant cause of action. Bailey filed his initial *pro se* complaint on June 10, 2019 in the Court of Common Pleas of Huntingdon County. (Doc. 1-2). The case was removed to federal

court on August 21, 2019, (Doc. 1), and the parties subsequently consented to magistrate judge jurisdiction on October 29, 2019. (Doc. 10). After severance of several parties named in the initial complaint, (Doc. 17), Bailey filed his first amended complaint on September 8, 2020. (Doc. 25). The defendants filed a motion to dismiss his amended complaint, (Doc. 26), which was denied as moot after Bailey was granted leave to file a second amended complaint. (Doc. 48). Bailey's second amended complaint, the operative pleading in this case, was filed on July 2, 2021, (Doc. 49), to which the defendants filed a motion to dismiss for failure to state a claim on July 27, 2021. (Doc. 53). This motion has been fully briefed and is ripe for resolution. (Docs. 49, 54, 60).

After consideration, we agree with the defendants that the plaintiff has not alleged sufficient facts to state a claim for relief with respect to his First Amendment, Eighth Amendment, and Fourteenth Amendment claims. Accordingly, for the following reasons, the motion to dismiss will be granted.

## II.   **Discussion**

### A. **Motion to Dismiss – Standard of Review**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for

the legal sufficiency of a complaint, the United States Court of Appeals for the Third

Circuit has aptly noted the evolving standards governing pleading practice in federal

court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief

may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,

20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." Morse v.

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court

need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not

alleged." Associated Gen. Contractors of Cal. v. California State Council of

Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a

plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

> As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to
> state a claim to relief that is plausible on its face." Twombly, 550 U.S.
> at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard
> when the factual pleadings "allow[ ] the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged." Iqbal,
> 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).
> This standard requires showing "more than a sheer possibility that a
> defendant has acted unlawfully." Id. A complaint which pleads facts
> "merely consistent with" a defendant's liability, [ ] "stops short of the
> line between possibility and plausibility of 'entitlement of relief.'"

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in

determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

**B. <u>The Motion to Dismiss Plaintiff's Second Amended Complaint Should Be Granted.</u>**

In his second amended complaint, Bailey asserts a cause of action under 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights by the defendants. His complaint alleges that the defendants violated his First Amendment right to freedom of association by depriving him of visitation rights with his mother. He further claims violations of his Eight Amendment right against cruel and unusual punishment for being confined in disciplinary segregation after he was found guilty at the disciplinary hearing. Finally, he alleges violations of his Fourteenth Amendment right to equal protection and due process based on the way his disciplinary proceedings were handled.

### 1. <u>First Amendment Claim</u>

Bailey alleges that the defendants deprived him of his right to engage in Freedom of Association without a compelling justification and timely notice when, following the disciplinary hearing, he lost his visitation rights with his mother. It is true, as Bailey asserts, that the Constitution protects "certain kinds of highly personal relationships," including among members of immediate family. Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (quoting Roberts v. United States Jaycees, 468 U.S. 609,

618 (1984)). However, it is also axiomatic that inmates do not retain rights that are found to be incompatible with their incarceration, and "freedom of association is among the rights least compatible with incarceration." Id. at 131. Accordingly, "some curtailment of that freedom must be expected in the prison context." Id. Thus, the Supreme Court has held that, so long as a regulation limiting prison visitation is rationally related to a legitimate penological interest, it is not violative of the First Amendment right that survives incarceration. Id. at 132 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). Under this standard, the Third Circuit has held that "the prison is acting on a legitimate penological interest when it restricts persons found with contraband, especially drugs, to non-contact visitation," because "the restriction reduces the chances that contraband will be passed from outside the prison." Henry v. Dep't of Corr., 131 F. App'x 847, 851 (3d Cir. 2005) (citing Overton, 539 U.S. at 132); Turner v. Safley, 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Here, to survive the motion to dismiss, Bailey must assert that the regulation restricting his visitation rights, DC-ADM 812 § 1.N.4, (Doc. 54-1, at 14), or the enforcement of the regulation as applied to him, does not serve any legitimate penological interest. For example, the Third Circuit in Cordero v. Warren, 612 F. App'x 650, 654 (3d Cir. 2015), found the plaintiff had sufficiently stated a First Amendment violation of freedom of association when he alleged the defendants violated applicable regulations by failing to reinstate visitation privileges with his

brother in retaliation for his grievances. Id.

Here, the applicable prison visitation policy, states:

In accordance with Department policy DC-ADM 801, any inmate who is dealing, using (including positive drug test results or refusal to submit to drug testing), or possessing illegal or non-prescribed drugs and/or drug paraphernalia, will be prohibited from having contact visits for the period specified below. This period and the special security precaution will commence immediately upon the issuance of the misconduct and continue, pending the outcome of the misconduct hearing. Upon a finding of guilt, contact visits shall be prohibited for the periods outlined below, and the inmate shall be referred to the Drug and Alcohol Treatment Department for an assessment of treatment needs. If the inmate is found not guilty of the misconduct, then contact visits shall be reinstated immediately.

1st offense - 180 days
2nd offense - one year
3rd offense - indefinite ban

(Doc. 54-1, at 14).

It appears Bailey is asserting not that the regulation itself is unconstitutional, but that the restriction was applied to him unconstitutionally, as his visitation rights were "terminated based on false, fabricated and tainted misconduct report . . . and flawed evidence," which denied him an opportunity to defend his innocence. (Doc. 60, at 6). However, unlike Cordero, Bailey has not put forth any facts alleging that defendants violated the prison policy which dictates that visitation rights should be restricted. It appears from Bailey's complaint that prison officials followed the visitation policy; Defendant Yohn ordered a Nark II test on the Valentine's Day card

and alleged that the card tested positive for the drug, suboxone (Doc. 49, at 5-6); Defendant Lofferty filed and issued a Misconduct Report alleging possession of a controlled substance (Doc. 49, at 6); a disciplinary hearing was held, and the plaintiff was found guilty (Doc. 49, at 7); and Bailey lost visitation rights with his mother. (Doc. 49, at 8). Bailey does not allege that defendants deprived him of his visitation for longer than the prescribed period, or allege any facts showing that the drug test was fabricated or tainted. His argument that the accuracy of the test deployed is not 100% is not sufficient to state a claim for violation of his First Amendment rights to visitation, given the "legitimate penological interest" served by the policy restricting visitation after a positive drug test.

Because Bailey has stated only conclusory allegations regarding the flawed nature of the disciplinary process and enforcement of the visitation policy, he has failed to state a claim for a violation of his First Amendment right to freedom of association. Accordingly, the motion to dismiss will be granted as to the plaintiff's First Amendment claim.

### 2. **Eight Amendment Claim**

Bailey also asserts a claim for violation of his Eight Amendment right against cruel and unusual punishment. He alleges that the defendants engaged in unnecessary and wanton infliction of pain by confining him in disciplinary segregation following his finding of guilt at his disciplinary hearing. Bailey faces an

exacting burden in advancing this Eighth Amendment claim against these defendants in their individual capacities. To sustain such a claim, he must plead facts that:

> [M]eet two requirements: (1) "the deprivation alleged must be objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison condition cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer—the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

In Overton, the Supreme Court found that withdrawing visitation privileges for a limited period in order to effect prison discipline is not a dramatic departure from accepted standards for confinement conditions, "[n]or does [it] create inhumane prison conditions, deprive inmates of basic necessities or fail to protect their health or safety, or involve the infliction of pain or injury or deliberate indifference to their risk." Overton, 539 U.S. at 137. Here, Bailey was found guilty of possession of a controlled substance and possession of contraband in violation of prison policy after a disciplinary hearing. As a consequence of his finding of guilt, he was sentenced to 45 days in segregation confinement. This sort of prison discipline is not a dramatic departure from accepted standard for confinement conditions and was pursuant to prison policy. Accordingly, Bailey's claim of cruel and unusual punishment in violation of the Eight Amendment fails as a matter of

law.

### 3.  <u>Fourteenth Amendment Claims</u>

Finally, Bailey alleges the defendants violated his Fourteenth Amendment rights under two theories. First, he alleges violations of his right to equal protection under a "class of one" claim, averring that, in denying him the opportunity to re-test the Valentine's card, the defendants treated him differently than other similarly situated inmates without compelling justification. He also claims the defendants violated his right of procedural due process by denying him the minimum procedural rights afforded to him within the prison rules and regulations including the opportunity to call witnesses and present documentary evidence.

The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Bailey's equal protection claim in this case apparently advances what is called a "class of one" claim, an assertion that the plaintiff has been treated differently than all others in some invidious fashion. In order to sustain a "class of one" equal protection claim "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated; (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in treatment. <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225 (3d Cir. 2006). So, "to state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that

he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 243 (3d Cir. 2008).

Bailey has failed to meet the minimum requirements for stating a claim for violations of equal protection. First, Bailey has failed to state any factual connection between the named defendants and the other inmates he alleged were allowed a second test beyond stating they were all "aware" that numerous "other similarly situated" inmates had been exonerated after receiving permission to have a second test. (Doc. 49, at 12). Thus, he has not alleged that any defendant personally treated him differently than such similarly situated inmates. Similarly, Bailey has not alleged that the inmates whose affidavits he includes with his second amended complaint were similarly situated. His main argument is that the Nark II test used to test the Valentine's day card is not 100% accurate and should be confirmed by a lab before being used as evidence. However, the three inmates whose affidavits indicated they were permitted to retest were subjected to a urine test, not a Nark II test. (Doc. 49-1, at 18-20). On this score, we do not find that Bailey has alleged they were similarly situated, and Bailey has failed to sufficiently state a claim for violations of his right to equal protection.

Furthermore, Bailey simply has not shown that there was no rational basis for the allegedly disparate treatment he received, nor can he. That disciplinary treatment

was the result of a Nark II drug test of his incoming mail, which disclosed the presence of suboxone. Bailey concedes that his test has an 85% accuracy rate, a degree of accuracy which strongly supports a rational inference that Bailey participated in a prison infraction. Since the actions taken in Bailey's case are grounded on this rational inference, the degree of irrationality that is necessary for a class of one equal protection claim is lacking here.

As to his procedural due process claim, Bailey faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct

personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts find violations of this due process right based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F. App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F. App'x 488 (3d Cir. 2007).

Most importantly, with respect to the instant claim, a prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent

assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir. 1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well settled that a claim that a misconduct report was false, standing alone, does not state a valid cause of action. As the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were

provided." <u>Richardson v. Sherrer</u>, 344 F. App'x 755, 757-758 (3d Cir. 2007) (citing <u>Freeman v. Rideout</u>, 808 F.2d 949, 952-53 (2d Cir. 1986); <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1140 (7th Cir. 1984)); <u>See also</u> <u>Booth v. Pence</u>, 141 F. App'x 66 (3d Cir. 2005); <u>Smith v. Mensinger</u>, 293 F.3d 641, 653-54 (3d Cir. 2002).

In our view, Bailey's second amended complaint demonstrates that the required minimum procedural protections were afforded to him and, indeed, "some evidence" existed to support a guilty verdict at his disciplinary hearing. In his complaint, Bailey concedes that the corrections officers filed a Misconduct Report after conducting a Nark II test on the Valentine's Day card and reporting that it tested positive for the drug, suboxone. (Doc. 49, at 5-6). He further acknowledges that the Nark II is a "commonly used test" that is 85% accurate, (<u>Id.</u>, at 10), and that the hearing examiner based his finding of guilt on a copy of the Nark II report/testing results indicating positive for the presence of suboxone. (<u>Id.</u>, at 7). We find that this demonstrates there was evidence in the record to support the finding reached by the hearing examiner and affirmed by the disciplinary board.

Bailey does not allege that prison officials failed to follow procedures or that no test was conducted which could be used to support the hearing examiner's finding. Instead, he argues that 85% accuracy is not sufficient, and the defendants' refusal to allow him to re-test the card denied him the opportunity to present evidence in his defense as required by <u>Wolff</u>. 418 U.S. at 556. At the outset, we note

that this argument essentially asks us to weigh the credibility of the evidence relied upon by the hearing examiner, which we are not permitted to do under <u>Hill</u>. 472 U.S. at 455-456. Rather, our due process inquiry is minimal, requiring only that some evidence existed to support the hearing examiner's finding.

We are not alone in this view. Indeed, a growing body of caselaw supports the position that in a prison disciplinary setting a positive drug test of the type obtained here satisfies the requirements of due process. On this score, the Third Circuit has held that a positive drug test in other contexts constitutes "some evidence" to satisfy the due process standard. <u>Thompson v. Owens</u>, 889 F.2d 500, 502 (3d Cir. 1989) ("Positive urinalysis results based on samples that officials claim to be appellant's constitute some evidence of appellant's drug use"). Further, other courts have specifically held a positive Nark II test to be sufficient evidence to support a finding by a prison disciplinary board. <u>See</u> <u>Clark v. Butts</u>, No. CIV. 18-2248-SEB-MPB, 2019 WL 2436974, at *2 (S.D. Ind. June 11, 2019) ("Although it is possible that a different test would have yielded a different result, due process did not require the prison staff to subject the substance to additional testing, even at [plaintiff's request].''); <u>see also</u> <u>Huntington v. Warden</u>, No. 219CV00192JMSMJD, 2020 WL 1027978, at *1 (S.D. Ind. Mar. 3, 2020).Moreover:

> [N]umerous courts have held that a prisoner does not have a constitutional right to an additional drug test to verify the results of an initial positive test. <u>See, e.g.</u>, <u>Henson v. U.S. Bureau of Prisons</u>, 213 F.3d 897 (5th Cir. 2000) (prisoner did not have a due process right to a

second test after first urinalysis test came back negative); Harrison v. Dahm, 911 F.2d 37, 41 (8th Cir. 1990) (due process does not require prison officials to provide a drug re-test or to provide an inmate with the documentary evidence of the results); Spence v. Farrier, 807 F.2d 753, 756 (8th Cir. 1986) (although inmates are permitted to present a defense, "[s]tates need not implement all possible procedural safeguards against erroneous deprivation of liberty when utilizing results of scientific testing devices in accusatory proceedings"); Cato v. Ives, No. CIV. 12-193-GFVT, 2013 WL 1856101, at *5 (E.D. Ky. Apr. 30, 2013) ("A prisoner also has no protected due process right in obtaining outside scientific or laboratory testing of evidence to be used against him"); Manfredi v. United States, No. CIV. 12-1905 RMB, 2012 WL 5880343, at *6 (D.N.J. Nov. 20, 2012) (no due process right to obtain a second, independent lab test.

White v. Stansil, No. 215CV0242EFBPTEMP, 2016 WL 4009954, at *6 (E.D. Cal. July 25, 2016); see also Gonzales v. Warden, S. Ohio Corr. Facility, No. 1:17-CV-70, 2017 WL 1048129, at *3 (S.D. Ohio Feb. 28, 2017), report and recommendation adopted sub nom. Gonzales v. Warden, S. Ohio Corr. Inst., No. 1:17CV070, 2017 WL 1049564 (S.D. Ohio Mar. 17, 2017) (and numerous cases cited therein).[3]

Bailey has not alleged that any other step of the procedural process was lacking. He received notice and a hearing, was provided additional time to obtain evidence to present in his defense, and an impartial hearing examiner found him guilty based on some evidence in the record. Accordingly, as to Bailey's claim for violations of his procedural due process right under the Fourteenth Amendment, the

---

[3] The fact that Bailey was not constitutionally entitled to a second drug test is also fatal to his contention that prison officials have violated his rights by failing to preserve the card for the past three years in order to allow for re-testing.

defendants' motion to dismiss should be granted.

**III.**    **Conclusion**

Accordingly, for the foregoing reasons, the defendants' motion to dismiss (Doc. 17), will be GRANTED.

An appropriate order follows.

Submitted this 9th day of December 2021.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge